

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2004

# Ewuame v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1705

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ewuame v. Atty Gen USA" (2004). *2004 Decisions*. Paper 191.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/191

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-1705
_____

KOMLA N. EWUAME

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A78-432-500)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 26, 2004

BEFORE: NYGAARD, AMBRO and VAN ANTWERPEN, Circuit Judges

(Filed :  October 28, 2004)

OPINION

VAN ANTWERPEN, Circuit Judge

Komla N. Ewuame ("Petitioner") petitions for review of the decision of the Board

of Immigration Appeals ("BIA"), which summarily affirmed the decision of the

Immigration Judge ("IJ"). The IJ denied Petitioner's application for asylum based on the finding that the application was made more than one year after Petitioner's arrival in the United States and was thus time-barred. The IJ also denied Petitioner's application for withholding of removal and protection under the Convention Against Torture ("CAT"), finding that Petitioner failed to show that it is more likely than not that he will be tortured or persecuted if he returns to Toga. For the reasons set forth below, we deny the Petition.

## I. FACTUAL AND PROCEDURAL HISTORY

Since we write only for the parties, we will set forth only the facts relevant to the issues. Petitioner is a native of Togo. He legally entered the United States on August 8, 2000, as a temporary non-immigrant visitor with the authority to remain here until October 8, 2000. Petitioner did not leave the United States on or before that date and remained here until the INS[1] instituted removal procedures on February 28, 2002. In September, 2000, Petitioner applied for a student visa, but he never actually received student status. In his application, Petitioner stated multiple times that he wished to secure an education "before I return to my country to hold a good position in the Togo government." Petitioner also applied for asylum in March, 2002, after the INS instituted removal proceedings. In addition, when his case was brought before the IJ, Petitioner requested withholding of removal and protection under the CAT.

---

[1]We use the term, "INS," to include the former Immigration and Naturalization Service as well as its successor agencies, the Department of Homeland Security, the Bureau of Border Security, and the Bureau of Immigration and Customs Enforcement.

According to his testimony, Petitioner is a known activist against the Togolese government and is in danger of being tortured or murdered if he returns to the country. Petitioner testified that he is a member of Union of the Forces of Change ("UFC"), a political organization that opposes the current Togolese regime. He testified that the police often broke up UFC meetings using tear gas and that his UFC membership caused his life and family to be threatened. Petitioner was a government employee for 28 years before leaving Togo, but he was transferred to a lower position in the government and intimidated by co-workers because of his anti-government activities.

Petitioner also testified that he was twice arrested and detained and that he was tortured and severely beaten during each of those detentions. The first arrest came when Petitioner was accused of planning a coup after traveling to Benin to visit family, and he was detained for one month. One beating was so severe that, according to Petitioner, he was hospitalized with a broken back. The second arrest came because Petitioner was receiving certain anti-government publications in the mail, and he was detained for one week. Petitioner was still a government employee and was not wanted by the Togolese authorities when he left the country.

The IJ issued its decision on July 30, 2002, denying Petitioner asylum relief, withholding of removal, and CAT protection. The BIA took appellate jurisdiction over the IJ decision pursuant to 8 C.F.R. § 1003.1(b)(3), (9). On February 13, 2003, the BIA summarily affirmed the IJ's decision. This Court has jurisdiction over the Petition for

3

Review pursuant to 8 U.S.C. § 1252(a)(1).

## II. STANDARD OF REVIEW

This Court's jurisdiction over final orders of removal is generally limited to review of BIA decisions. However, in cases such as this, where the BIA summarily affirms the IJ decision without an opinion, this Court reviews the IJ decision. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003); Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).

The scope of review is narrow. This Court applies substantial evidence review to findings of fact. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). We are thus bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); see also Abdille, 242 F.3d at 483. In addition, this Court gives Chevron deference to the BIA's reasonable statutory interpretations. Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). However, "deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole." Balasubramanrim v. INS, 143 F.3d 157, 162 (3d Cir. 1998) (citation omitted).

## III. DISCUSSION

1.   Petitioner's Application for Asylum

Under 8 U.S.C. § 1158(a)(2)(B), an applicant for asylum must demonstrate by clear and convincing evidence that the application has been filed within one year of the

4

date of his or her arrival in the United States. However, the time limit may be excused if the applicant demonstrates "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application...." 8 U.S.C. § 1158(a)(2)(D).

Petitioner asserts three bases for excusing his late filing under this exception. First, Petitioner claims that he had legal status in the United States as a student until April 17, 2001, and that his asylum application was filed within one year of the end of his student status. The evidence suggests, however, that Petitioner only applied for a student visa and never actually obtained student status. Second, Petitioner asserts that he did not know how to go about applying for asylum. The IJ found this argument insufficient, especially considering that Petitioner was sophisticated enough to avail himself of the application process for a student visa. Finally, Petitioner argues that the fact that he wrote articles disparaging the Togolese government which were published on the Internet constitutes "changed circumstances," because those articles make it more dangerous for him to return to Togo. However, these articles were not published in Petitioner's name, and Petitioner did not explain how anyone would know that he wrote the articles. The IJ thus rejected Petitioner's changed circumstances argument.

Even if Petitioner's argument on this point had merit, we do not have jurisdiction to review the IJ's conclusion that Petitioner failed to demonstrate "changed circumstances." This Circuit held in Tarrawally that we lack jurisdiction to review

5

determinations by the BIA or IJ regarding what constitutes extraordinary circumstances under § 1158(a)(2)(D). 338 F.3d at 185. Petitioner argues, though, that this Circuit has not expressly held that the IJ's determination of what constitutes *changed* (as opposed to extraordinary) circumstances is outside of our jurisdiction. This argument is completely without merit. We held in Tarrawally that 8 U.S.C. § 1158 (a)(3), which states, "No court shall have jurisdiction to review any determination...under paragraph (2)," clearly expressed congressional intent to preclude judicial review of extraordinary circumstances findings. Petitioner fails to recognize that paragraph (2) of § 1158(a) includes *both* extraordinary circumstances *and* "changed" circumstances. Consequently, although we did not expressly say so in Tarrawally, § 1158 (a)(3) also divests us of jurisdiction to review the IJ's determination regarding Petitioner's purported changed circumstances.

2.     Eligibility for Withholding of Removal or Protection Under the CAT

The Petitioner has the burden of proof for establishing eligibility for withholding of removal and for protection under the CAT. Mulanga v. Ashcroft, 349 F.3d 123, 133 (3d Cir. 2003); see also 8 C.F.R. § 208.16. To establish eligibility for withholding of removal, a petitioner must establish that his "life or freedom would be threatened in [his home] country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231 (b)(3)(A). The Supreme Court has held that a petitioner must establish that it is "more likely than not" that his life or freedom will be threatened. INS v. Stevic, 467 U.S. 407, 429-30 (1987).

6

To gain relief under the CAT, a petitioner must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16 (c)(2). In finding that Petitioner failed to meet his burdens with respect to both forms of relief, the IJ pointed to numerous inaccuracies in Petitioner's testimony as well as Petitioner's failure to provide corroborating evidence. As we understand it, the IJ reasoned that Petitioner's failure to provide corroboration was fatal to his ability to meet his burden of establishing eligibility for relief, especially given the inconsistencies in Petitioner's testimony.

Petitioner argues, however, that his testimony was not inconsistent or incredible in any way. Petitioner's brief points out numerous findings by the IJ regarding alleged inconsistencies in Mr. Ewuame's testimony that were not supported by substantial evidence. This Court has stated that, although we afford deference to the IJ's factual determinations, we will not uphold an IJ's conclusion that "is not based on a specific, cogent reason, but instead, is based on speculation, conjecture, or an otherwise unsupported opinion." Dia, 353 F.3d at 250; see also Gao, 299 F.3d at 272. Moreover, "minor inconsistencies" that do not go to the heart of the claim for relief do not constitute sufficient evidence to support adverse credibility determinations. Gao, at Id. (citations omitted); see also Tarrawally, 338 F.3d at 187.

The instant case is similar to Tarrawally in that some of the IJ's reasons for finding Petitioner's testimony to be inconsistent "were based on presumptions not grounded in

7

the record.... However, the IJ also offered other rationales which went to the heart of the withholding of removal and Convention claims, which could not be adequately explained...." 338 F.3d at Id. For instance, the IJ disbelieved Petitioner's arrest story because "the military and gendarmerie have very little concern for those whom it arrests and holds," yet the military showed "concern" for Petitioner by taking him to the hospital for his injuries. A.R. at 47. As Petitioner's brief points out, if we accept the fact that the military took Petitioner to the hospital for a broken back, it supports the claim that the military inflicted those injuries rather than the conclusion that the military was somehow concerned for his well-being. The IJ did not offer any explanation for choosing one conclusion over the other. Thus, the IJ's conclusion *on this point* seems to be based on sheer conjecture and unsubstantiated opinion. In addition, the IJ found that Petitioner "failed to answer any question directly" and that his answers "wandered." However, a review of the transcript from Petitioner's testimony reveals that this finding is completely without basis in the record. Petitioner responded to virtually every question directly and only occasionally had to be asked a question more than once.

At the same time, however, the IJ's findings on other inconsistencies are supported by substantial evidence and severely undercut Petitioner's ability to meet his burdens. For instance, the IJ found out that Petitioner did not offer a cogent explanation for why such a well-known political activist would be able to continue to hold a "good position in the Togo government" for 28 years. More significantly, Petitioner failed to reconcile his

8

alleged fear of torture and persecution in Togo with the multiple statements in his application for a student visa evidencing an intent and desire to return to Togo and to his position in government. These are the sorts of inconsistencies that go to the heart of Petitioner's claims for withholding of removal and CAT protection.

Given these inconsistencies, we cannot fault the IJ's insistence on certain corroborating evidence. This Circuit recognized in Abdulai v. Ashcroft that the BIA or IJ may, under certain circumstances, require corroboration from an otherwise credible witness in order to meet his burden of proof. 239 F.3d 542, 554 (3d Cir. 2001). We also approved the BIA's three-part inquiry for determining when it is proper to require corroboration. Id. According to this standard, the IJ must make "(1) an identification of the facts for which 'it is reasonable to expect corroboration;' (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Id. (quoting In re S-M-J-, 21 I. & N. 722, 725 (BIA 1997)).

In this case, Petitioner failed to provide any corroborating evidence. Moreover, the IJ identified two facts for which it was reasonable to expect corroboration. First was Petitioner's assertion that he is a member of the political opposition group, the UFC. This assertion is central to Petitioner's claim for relief, and the IJ found that corroborating evidence – Petitioner's UFC membership card – was reasonably available to Petitioner.[2]

[2]Cf. Tarrawally, 338 F.3d at 186 (upholding the IJ's adverse credibility determination in part because the petitioner "did not introduce any evidence other than his testimony to

9

The IJ also found that Petitioner's purported explanation for not producing the evidence – that he gave the card to his wife before leaving Togo – was insufficient given that Petitioner remained in contact with his wife after arriving in the United States.[3]

Second, the IJ determined that it was reasonable to expect corroborating evidence of Petitioner's back injury that allegedly occurred during his first arrest. Petitioner stated that he received an X-ray confirming the injury at the hospital in Togo, but he does not now have the X-ray or any other medical documentation. Moreover, the IJ found that a broken back is such a serious injury that Petitioner could have received confirmation of the injury from a doctor even after arriving in the United States.

Since Petitioner failed to give a cogent explanation to reconcile his long-standing "good position in the Togo government" and his apparent desire to return to Togo with his history of political activism and his fear of torture and persecution, we agree that it was reasonable for the IJ to require corroborating evidence from Petitioner to meet his burden of proof. We therefore uphold the decision of the IJ that, without providing such evidence or adequately explaining his failure to do so, Petitioner has failed to meet his

---

show that he belonged to groups opposing the [government] and was persecuted on account of his political opinion").

[3]Petitioner asserts that he has not been in telephone contact with his wife since before he was detained by the INS in February of 2002. He also asserts that requesting her to send the membership card by mail would be futile because the Togolese government is interfering with the mail. However, Petitioner offered no evidence to support his claim that the government was intercepting his mail, and he offered no testimony that he has ever attempted to have his wife mail the membership card.

burden of proving eligibility for withholding of removal or CAT protection.

For the foregoing reasons we deny the Petition.